DELTA MATERIALS CORPORATION *vs.* JOHN R. BAGDON, JR.,
& others.[1]

No. 90-P-94.

Franklin. October 22, 1991. - September 23, 1992.

Present: SMITH, JACOBS, & GILLERMAN. JJ.

*Evidence*, Expert opinion, Value. *Value. Real Property*, Partition.

In a Probate Court proceeding by a plaintiff holding an undivided four-fifths interest in three noncontiguous undeveloped parcels of land as a tenant in common with the defendants, who together held a one-fifth interest, seeking partition of the land, the judge's failure to make findings of fact in accordance with Mass.R.Civ.P. 52 (a) or G. L. c. 215, § 11, supporting his conclusion that the land could not be divided advantageously, required that the case be remanded to the judge for him to determine the fair value of each of the parcels described in the petition for partition, before addressing again the question of advantageous division. [336-340]

PETITION filed in the Franklin Division of the Probate and Family Court Department on August 26, 1987.

The case was heard by *Henry O'Connor, Jr.*, J.

*Jack D. Curtiss* for the defendants.

*Lewis A. Whitney, Jr.*, for the plaintiff.

JACOBS, J. The defendants appeal from an "interlocutory order"[2] of a probate judge directing a commissioner to make a partition by sale of certain land in the town of Sunderland.

---

[1] David R. Bagdon, Helen Bagdon, and Richard Bagdon.

[2] "A decree ordering partition, although denominated 'interlocutory' by G. L. c. 241, § 10, is final by its nature: 'once rendered, it is a conclusive determination of the rights of all parties to the proceedings under the petition, and no question any longer remains open concerning either ownership or title, or their individual shares and interest.'" *Asker* v. *Asker*, 8 Mass. App. Ct. 634, 637 (1979), quoting from *Brown* v. *Bulkley*, 11 Cush. 168, 169 (1853). See *Jefferson* v. *Flynn*, 348 Mass. 165, 166 (1964); *Platts* v. *Wronski*, 15 Mass. App. Ct. 30, 33 (1982); *Moat* v. *Ducharme*, 28 Mass. App. Ct. 749, 750 n.1 (1990).

Subject to the order are three noncontiguous undeveloped parcels of approximate area of one, thirty-seven, and 101 acres. The plaintiff holds an undivided four-fifths interest in the parcels as a tenant in common with the defendants, who together hold a one-fifth interest.

This action was initiated in 1987 by the plaintiff filing a petition for partition pursuant to G. L. c. 241. After three days of trial, the judge determined that the parcels "cannot be divided advantageously" and issued an interlocutory order of sale pursuant to G. L. c. 241, § 31.[3] See G. L. c. 241, § 10.[4] Following a further interlocutory order detailing the terms of sale, the judge filed a written decision containing findings of fact and conclusions of law and allowed the defendants' motion for a stay of the sale pending this appeal. The defendants essentially argue that the judge did not explore sufficiently the possibility of physical partition of the parcels. We vacate the judge's order on the ground that his conclusion that the land cannot be divided advantageously is not supported by his findings, and remand the case to the Probate Court for further proceedings.

We summarize the pertinent facts. One of the defendants, John R. Bagdon, Jr., has been farming portions of the land in issue for thirty-three years, thereby continuing a family farming tradition which began on the same land shortly after the turn of the century. There is interest within the defendant group in further continuing that tradition. The plaintiff conducts a well-established gravel business and operates a gravel pit on land adjacent to the thirty-seven-acre parcel. Until 1986, the parcels in issue were owned exclusively by members of the defendants' family. During 1986 and 1987, the plaintiff acquired its interest in the parcels by five deeds

---

[3]General Laws c. 241, § 31, states in pertinent part that "the court may order the . . . [sale of] the whole or any part of the land which cannot be divided advantageously . . . ."

[4]General Laws c. 241, § 10, provides in pertinent part: "If it is found that the petitioner is entitled to have partition for the share claimed or for any less share, the court shall make the interlocutory decree that partition be made, and therein determine the persons to whom and the proportions in which the shares shall be set off."

from members of the defendants' family, for recited consideration totalling $1,100,000. The actual consideration for the respective purchases consisted of immediate payment of twenty percent of the purchase price and the giving of notes for the balance secured by mortgages of the deeded property interests. The defendants did not join in the mortgages. In 1987, the plaintiff acquired a five-acre parcel abutting the thirty-seven-acre parcel together with a right-of-way over the thirty-seven-acre parcel to a public way. It is the plaintiff's long-term goal to excavate gravel from the thirty-seven-acre parcel in conjunction with its nearby gravel business.

The judge devoted many of his findings to describing the parcels and the parties' interest in them. He also recounted the evidence of valuation, including the fair market values of each of the parcels as testified to by the parties' expert witnesses. He noted opinions valuing the one-acre parcel at $32,000 and $36,000, the thirty-seven-acre parcel from $425,000 to over $7,000,000, and the 101-acre parcel from $925,093 to $975,000, including a valuation of $155,000 for a commercial area within that parcel. Faced with a battle of experts, he could have rejected, but did not reject, some opinions and accept others. See *Fechtor* v. *Fechtor*, 26 Mass. App. Ct. 859, 863 (1989). He underscored areas of disagreement such as those relating to the quantity and value per cubic yard of recoverable gravel in the thirty-seven-acre parcel and discussed the advantage which the plaintiff would have in taking gravel from that parcel.[5] He then discussed a possible order which would combine a sale of one parcel with the setting off of the other parcels to the parties. The specific combination contemplated by the judge was the sale of the one-acre parcel and the setting off of the thirty-seven-acre parcel to the plaintiff and the 101-acre parcel to the defendants. He concluded:

---

[5]The plaintiff could choose to excavate within its right-of-way and would not be required to maintain buffer zones along boundaries of the thirty-seven-acre parcel which borders adjacent land owned by it.

"I would then be left with the problem of: (A) the mortgage on the entire premises; (B) who now pays how much money to whom. This is the problem that I cannot solve, the question that I cannot answer, and the reason that *I FIND* that the property cannot be advantageously divided."

Notably missing from the judge's decision are any express findings of the fair market values of the parcels and a determination as to their divisibility.

The plaintiff concedes that the mortgages given by it in acquiring its four-fifths interest alone are not sufficient grounds for the judge's conclusion. The defendants point out that none of the mortgagees is a defendant in the case, nor did any respond to the petition. In any event, "[i]t is familiar law that a conveyance . . . in mortgage . . . by a tenant in common of his undivided interest . . . is invalid as against his cotenants without their consent." *Curtiss* v. *Sheffield*, 213 Mass. 239, 244 (1913). See generally *Marks* v. *Sewall*, 120 Mass. 174, 176-177 (1876). Moreover, G. L. c. 241, § 28, provides that while a person having a mortgage on the share of a cotenant is "concluded by the decree, so far as it relates to the partition and the assignment of the shares . . . his lien shall remain in full force upon the part assigned to or left for such cotenant . . . ." Any outstanding mortgage, therefore, would attach to any parcels or portions thereof assigned to the plaintiff. In the event of a sale of a parcel ordered as part of a scheme of division, G. L. c. 241, § 28, provides that the mortgage lien attaches to the cotenant's share of the proceeds.

The parties to a partition proceeding are "entitled to findings on [disputed issues of material fact] whether under Mass.R.Civ.P. 52(a), 365 Mass. 816 (1974), or G. L. c. 215, § 11, as appearing in St. 1975, c. 400, § 58." *Asker* v. *Asker*, 8 Mass. App. Ct. 634, 639 (1979).[6] That entitlement is not

---

[6]"Partition proceedings under G. L. c. 241, § 2, appear to be treated procedurally as equity proceedings in the Probate Courts [citations omitted], although that point is not clear from the statute. Contrast G. L. c.

satisfied by mere recitation of the evidence, *Skerrett* v. *Hart-nett*, 322 Mass. 452, 454 (1948), and must, in the circumstances, include a determination of the fair market value of each of the parcels and the feasibility of their physical division. " 'The nature and exactness of the findings required depends on the circumstances of the particular case.' " *Leader* v. *Hycor, Inc.*, 395 Mass. 215, 224 (1985), quoting from *Kelley* v. *Everglades Drainage Dist.*, 319 U.S. 415, 419 (1943), construing a Federal rule similar to Mass.R.Civ.P. 52(a).

The governing statute contemplates "partition of all or any portion of the land included in the petition . . . ." G. L. c. 241, § 4. Division in kind is the primary and favored method of partition. *Mello* v. *Mello*, 322 Mass. 68, 69 (1947). See 4 Thompson, Real Property § 1823, at 291-292, § 1828, at 319 (1979); Park & Park, Real Estate Law § 754, at 184 (1981). "A property consisting of scattered lots is subject to partition in kind where the parties to the suit have an undivided interest in each lot." Thompson, *supra* at § 1823, at 292. Although a division of property must be just and equitable, there is no requirement that *each parcel* must be divided in accordance with the fractional interest of the parties or even that each party receive a share of each parcel. See *Hagar* v. *Wiswall*, 10 Pick. 152, 153 (1830); *Buck* v. *Wol-*

---

241, § 25. As equity proceedings, partition proceedings would be subject to the Massachusetts Rules of Civil Procedure. See Mass.R.Civ.P. 1, 365 Mass. 730 (1974). If a partition petition is not regarded as one seeking equitable relief, the parties would be entitled to a statutory report of material facts." *Asker* v. *Asker, supra* at 639 n.5. This court has noted "that partition cases appear to be recognized as equity proceedings, and, thus, are subject to the Massachusetts Rules of Civil Procedure." *Stylianopoulos* v. *Stylianopoulos*, 17 Mass. App. Ct. 64, 65 n.2 (1983). Contrast Nolan, Equitable Remedies § 431, at 510-511 (1975). For our purposes, nothing turns on the question other than the nomenclature applied to the parties and the proceedings. If the judge's decision is viewed as a report of material facts pursuant to G. L. c. 215, § 11, any failure of the defendants to seek an amendment or amplification of the "findings," see *Sullivan* v. *Sullivan*, 320 Mass. 114, 115-116 (1946), is of no moment since the evidence is reported. See *Vergnani* v. *Vergnani*, 321 Mass. 699, 701 (1947); *Paone* v. *Gerrig*, 362 Mass. 757, 759 & n.4 (1973). In any event, amplification of the judge's findings could not cure his erroneous conclusions of law, that the existence of outstanding mortgages and his inability to decide on "owelty" (see note 7, *infra*) prevent advantageous division.

*cott,* 15 Gray 502 (1860); *Barnes* v. *Lynch,* 151 Mass. 510, 513 (1890). If division in kind cannot be accomplished advantageously and "without great inconvenience to the owners," part of the land involved may be set aside to one party, with his consent, conditional on his payment of such amount of money to the other party[7] as to make the partition "just and equal." G. L. c. 241, § 14. The statutory mandate of equality has been interpreted as meaning "just and equitable." *Batchelder* v. *Munroe,* 335 Mass. 216, 218 (1957).

Peculiar to partition proceedings is the notion that neither party has the burden of proof on the central issue before the court — whether the land can be advantageously divided. *Clough* v. *Cromwell,* 250 Mass. 324, 332 (1924). That peculiarity places squarely on the court the responsibility for determining "by a preponderance of the whole evidence that the land cannot be advantageously divided before ordering a sale." *Ibid.* A sale is not simply an equally available alternative to a physical division; it may be ordered only after the court determines, upon careful findings, that advantageous division cannot be made. *Clough* v. *Cromwell, supra; Mello* v. *Mello,* 322 Mass. at 69. The considerations involved in that decision "no doubt have reference mainly to the physical conditions of the land to be divided, but the advantage or disadvantage generally must be pecuniary." *Heald* v. *Kennard,* 180 Mass. 521, 522 (1902). A judge contemplating division may take into account "the *de facto* condition of the premises," together with any potential damage to the profitability of the land. *Clough* v. *Cromwell, supra* at 332-333. See *Heald* v. *Kennard, supra* at 523. The market value of the land involved rather than its area is likely to be central to the analysis. *Ibid.* See *Clough* v. *Cromwell, supra* at 332; Newhall, Settlement of Estates § 313, at 329 (1958). Where, as here, the petition for partition involves noncontiguous parcels, full exploration of the potential for advantageous divi-

---

[7]The sum of money ordered to be paid in order to equalize a disproportionate division of property is sometimes termed "owelty." See *Nichols* v. *Nichols,* 181 Mass. 490, 491, 492 (1902); 4 Thompson, Real Property § 1827, at 313 (1979).

sion in kind, or partially in kind, cannot be accomplished without a determination of the market value of each of the parcels.

To be sure, the task confronting the judge in this case is formidable, given the differences in the parties' ownership interests and objectives, the wide disparity in the experts' opinions of the value and gravel content of the thirty-seven-acre parcel, the likelihood that the one-acre parcel may be too small to be profitably divided, and the possibility that physical division of the thirty-seven-acre parcel cannot be accomplished without substantial damage to its profitability as a source of gravel. At the same time, however, the size and characteristics of the 101-acre parcel, with its extensive frontage on public ways, its 70,000 square feet of commercially zoned land, its farmland and gravel bank, and its general suitability for residential development, may present numerous possibilities for advantageous division. The difficulty and complexity of a just and equitable division do not alone justify resort to a sale.

It appears from the record and the judge's recounting of the testimony of the experts in his findings that there is sufficient evidence from which to determine, under the familiar principles of market valuation established by our appellate decisions, the fair value of each of the parcels that is the subject of the petition for partition. If, however, the judge concludes that more evidence is necessary he may reopen the hearing.

Once market values have been found, the question of advantageous division should be addressed anew. In that endeavor, the judge should explore all convenient and equitable options, including set off of whole parcels to the parties, physical division of one or more of the parcels, adjustment by voluntary payment of money by one of the parties, sale of one or more of the parcels and assignment of the proceeds, and any reasonable combination of those options. Only if that process does not produce a plan for advantageous division should sale of all the parcels be ordered. If a determination is made that a scheme involving physical division of one

or more of the parcels is feasible and advantageous, a commissioner may be appointed pursuant to G. L. c. 241, § 12, to assist the court in making partition.

The interlocutory order is vacated, and the case is remanded to the Probate Court for further proceedings consistent with this opinion.

*So ordered.*